# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES E. McBRAYER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:09-CV-2329-RDP** |
| | } | |
| **TOWN OF SNEAD,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This Fair Labor Standards Act case is before the court on the cross motions for summary judgment filed by Plaintiff Charles E. McBrayer (Doc. # 10), and Defendant Town of Snead (Doc. # 11).  The matters have been fully briefed (Docs. # 13, 14, 18, 20, 21, and 22), and are ripe for decision.

Congress enacted the Fair Labor Standards Act ("FLSA" or the "Act") "in order to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'"  *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (quoting 29 U.S.C. §§ 202(a) & (b)). The FLSA requires covered "employers" to pay overtime wages once "employees" exceed forty hours of work in a given week:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  Plaintiff seeks relief under the FLSA for unpaid overtime wages.  Section 213, however, lists a host of exemptions to the FLSA's minimum wage and maximum hour requirements.  *See* 29 U.S.C. § 213(b)(1)-(30).

The principal issue in this case is whether Plaintiff was exempt from the FLSA's overtime requirements while employed with Defendant.  For the reasons stated below, the court concludes that Plaintiff was *not* so exempt while he was paid an hourly rate, but he was an exempt employee while he was paid a salary.

## I.    STATEMENT OF FACTS

Plaintiff Charles McBrayer's eight-month stint as Chief of Police for the Town of Snead (Defendant) officially began on April 14, 2008 when he was appointed by the city council.  (Doc. # 13 at 1).  Before his appointment, however, Plaintiff worked for a short period as a part-time patrol officer, first for $10.00 an hour, then for his Chief's salary.  (*Id.* at 2).  He continued to receive a salary until December 2008, when the city council declined to extend his appointment.  (*Id.* at 1).

As Chief of Police, Plaintiff was responsible for the supervision and command of uniformed personnel.  (Doc. # 13 at 12).  In response to a string of robberies, Plaintiff increased patrols in the affected area and publicized that fact.  (Doc. # 13 at 11).  As a matter of departmental policy, the Police Chief was notified of every arrest, accident, pursuit, or firearm discharge.  (Doc. # 14 at 8-9).  Plaintiff created a rank structure for uniformed personnel (which the council approved), and he promoted employees within that structure during his tenure.  (Doc. # 13 at 4-5).  Plaintiff also formulated a policy (which was adopted by the mayor and the

council) requiring officers to become trained first responders who could deal with non-police emergencies.  (Doc. # 13 at 11).  Plaintiff appointed an officer to make sure department employees were properly trained on their gear, and he approved the sorts of pepper spray officers could use. (Doc. # 13 at 9-10).  When it was time to update the Town of Snead Police Manual, primary responsibility for making the revisions rested with Plaintiff.  (Doc. # 13 at 8).

Further, although Plaintiff argues that the range of disciplinary tools available to him was limited, the Police Manual states that one of the duties of the Chief of Police is to recommend or impose discipline (Doc. # 13 at 14)—a duty Plaintiff actually performed on several occasions. When the public made complaints about an officer, Plaintiff would interview the complainant and the officer, then give a recommendation to the mayor or city council on how to proceed. (Doc.  # 13 at 10).  On at least one occasion Plaintiff recommended discipline based on such an investigation, and the mayor and council agreed with his conclusion.  (Doc. # 13 at 10).  And when an officer was caught sleeping on the job, Plaintiff threatened to recommend termination if the officer did not "shape up."  (Doc. # 13 at 25).  That threat solved the problem.

That is not to say Plaintiff's disciplinary recommendations were always followed:  once Plaintiff recommended that the council fire an officer for driving poorly, but the council rejected his recommendation and it was that officer who was promoted to Chief of Police after Plaintiff's tenure.  (Doc. # 20 at 5).

As Chief of Police, Plaintiff played an active role in staffing the department.  Although Plaintiff maintains that the city council retained ultimate authority for the decisions to hire new officers (Doc. # 20 at 4), it is undisputed that Plaintiff interviewed applicants to the force and

was responsible for either performing or directing someone to perform background checks on applicants. (Doc. # 13 at 3). He also made recommendations to the council on which applicants should be hired: on one occasion he recommended an officer by name; on another he submitted a list of recommended applicants for the council to chose from. (*Id.*; Doc. # 20 at 5). Plaintiff also interviewed applicants for department secretary, and the council hired the applicant he recommended. (Doc. # 13 at 3-4).

Scheduling was another one of Plaintiff's responsibilities. According to the Police Manual, the Chief is responsible for designating regular days off, vacation days, and leaves of absence. (Doc. # 13 at 12). Plaintiff used this authority to manipulate the department secretary's schedule to prevent her from becoming a full-time employee, enabling the department to save enough money to hire an additional patrol officer in the process. (Doc. # 13 at 4). When Plaintiff came into office, he also changed the schedule (with approval) so that officers worked twelve-hour shifts instead of the eight-hour shifts to which they were accustomed. (Doc. # 13 at 10).

Finally, it is undisputed that Plaintiff had duties related to acquisitions in his department. The Police Manual gave Plaintiff responsibilities including the assignment, distribution, and acquisition of department property, furnishings, and supplies. (Doc. # 13 at 13). As Chief of Police, Plaintiff directed that new badges be ordered and given to officers. (Doc. # 13 at 7). He submitted requests for money and cars to the council, along with bids from three vendors. (Doc. # 13 at 8). He approved a request to obtain more pepper spray (Doc. # 13 at 10), and he

implemented a voucher program (with council approval) to provide uniforms for the officers (Doc. # 13 at 12).

In performing these duties, Plaintiff claims he "typically and routinely" worked "many long hours each work week," but he never received any overtime pay. (Doc. # 1 at 3). Plaintiff filed this lawsuit to recover the unpaid overtime under the FLSA. (Doc. # 1 at 4).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the

nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (*i.e.* facts that would entitle it to a directed verdict if not controverted at trial).  *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case ..., no reasonable jury could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438 ( en banc ). On the other hand, if the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for

directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   DISCUSSION

Under the Fair Labor Standards Act, most employees are entitled to be compensated at a rate at least one and a half times higher than their usual pay for hours worked in excess of forty during the course of a week. *See* 29 U.S.C. § 207(a)(1). But there are, of course, exceptions to this requirement. Some employees are exempted from the overtime provisions of the Act. For instance, employers are not required to pay overtime to "any employee employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), and the typical 40-

hour work week does not apply to some public servants with work periods greater than seven days, 29 U.S.C. § 207(k).  The burden of proving that an employee fits into one of these exemptions rests squarely on the employer, and the court must narrowly construe exemptions from FLSA coverage against the employer.  *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

Here, Defendant argues that Plaintiff was not entitled to overtime pay during any phase of his employment due to the executive, *see* 29 C.F.R. § 541.100(a), and administrative, *see* 29 C.F.R. § 541.200(a), exemptions—either independently or in combination, *see* 29 C.F.R. § 541.708.  Defendant also argues that Plaintiff was subject to the partial exemption that can apply to law enforcement personnel.  *See* 29 U.S.C. § 207(k).[1]  Plaintiff denies that he was ever an exempt employee, but has not affirmatively sought judgment as a matter of law under Rule 56 for any time period for which he was receiving a salary.  Rather, Plaintiff argues that it is for the trier of fact to determine his status while he was a salaried employee.  Plaintiff has moved for summary judgment with respect to the time that he was paid an hourly wage and contends that the Rule 56 evidence on file establishes that he did not fall into any of the exemptions Defendant has invoked, and that he is entitled to partial judgment as a matter of law.

Resolution of these cross motions for summary judgment requires the court to answer two questions: 1) Was Plaintiff an exempt employee during the time he was paid a salary? 2)

---

[1] Defendant does not cite or directly discuss § 207(k) in any of its documents filed with the court.  Nonetheless, Defendant appears to argue that Plaintiff was subject to the § 207(k) partial exemption because Defendant discusses 29 C.F.R. § 553.230, which references § 207(k), as part of its argument that Plaintiff is not entitled to overtime compensation.  (Doc. # 13 at 24) (Defendant incorrectly inserted a "1" in front of § 553.230).  Additionally, Defendant generally opposes Plaintiff's allegation that he was not subject to the § 207(k) partial exemption.  (*See* Docs. # 14 at 5 and # 18).  Out of an abundance of caution, the court fully addresses the § 207(k) partial exemption.

Was Plaintiff an exempt employee during the time he was paid an hourly wage?  Each of these questions will be addressed in turn.

**A.   The Undisputed Evidence Demonstrates That After He Began Receiving a Salary, Plaintiff Was Exempt from the FLSA's Overtime Requirements.**

> **1.   Plaintiff was exempt under the executive exemption.**

To successfully invoke the executive exemption, an employer must establish four elements: 1) the employee is compensated on a salary basis of at least $455 per week; 2) the employee's primary duty is management; 3) the employee customarily and regularly directs the work of two or more other employees; and 4) the employee either has "authority to hire or fire other employee" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100.  Plaintiff does not contest that the first and third elements are met, so this court must only determine whether a genuine issue of material fact exists as to the second and fourth.

Starting with the second element of the executive exemption, the test is whether the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100.  To determine whether Plaintiff's employment meets this criterion, the court must determine 1) whether Plaintiff performed management activities as Chief of Police, and if so, 2) whether performance of those management activities was his primary duty.

The pertinent regulation indicates that management activities include:

Interviewing . . . employees;

setting and adjusting their rates of pay and hours of work; . . .

appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; . . .

disciplining employees; . . .

determining the techniques to be used; . . . [and]

determining the type of materials, supplies, machinery, equipment or tools to be used . . . .

29 C.F.R. § 541.102.  The undisputed Rule 56 evidence shows that Plaintiff's job involved all of those activities.  He interviewed applicants for department secretary and officer positions; he adjusted the work schedules of department personnel; he created a rank structure and promoted employees within that structure; he recommended discipline for one officer for poor driving, disciplined another for sleeping on the job, and recommended that disciplinary action be taken against a third on another occasion; he increased patrols in an area, approved the pepper spray that could be used, devised a policy that required all officers to become first responders, and was primarily responsible for updating the departmental policy manual; and he was responsible for determining which equipment to obtain, taking bids on that equipment, and seeking approval for those acquisitions from the council.

Of course, Plaintiff argues that these were not truly management activities and highlights the role that the mayor and city council played in the performance of his duties.  For instance, although Plaintiff admits he interviewed employees and made recommendations on hiring, he emphasizes that the city council had final say on the matter.  Although Plaintiff was primarily

responsible for revising the departmental policy manual, the implementation of those revisions depended on adoption by the town council (Doc. # 20 at 6).   Additionally, although Plaintiff changed officer schedules from 8 to 12 hour shifts, the mayor and the council had to approve that change.   In some instances, the council followed Plaintiff's recommendations (one officer was hired on his recommendation); on other occasions his recommendations were rejected (another officer was retained even though Plaintiff recommended his termination).   But everyone answers to someone, and the executive exemption contains no language limiting its scope to employees whose actions need no approval from a higher authority.

Because the evidence in the Rule 56 record shows that Plaintiff performed many management activities, the court must now determine whether those activities were his "primary duty" for the purposes of the executive exemption.   The FLSA's regulations defines the term "primary duty" as "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).   This determination is intensely factual, and does not look at any one task in isolation, but emphasizes "the character of the employee's job as a whole."   *Id*.   In determining an employee's primary duty, a court should consider factors including "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."   29 C.F.R. § 541.700(a).   It should be emphasized that while the amount of time an employee spends doing exempt work can serve as a "useful guide" in this determination, that factor is not alone dispositive.   *See id.* § 541.700(b).

Thus it is possible for an employee's primary duty to be one that occupies only a minority of his time if the other factors support such a conclusion. *Id*.

Considering the character of Plaintiff's employment as a whole and the undisputed evidence in this case, the court has no trouble concluding that performance of management activities described above was Plaintiff's primary duty. Although there is insufficient evidence on record to directly show how much time Plaintiff spent performing management activities or how his pay compared to that of other employees, there is still substantial evidence to show Plaintiff's management activities were far more important than his non-exempt duties. Indeed, the only evidence Plaintiff gives indicating he ever performed *any* non-exempt duties is his deposition testimony that he or one of the full-time officers had to go out on patrol when a part-time officer was unavailable to fill an empty spot in the schedule. (Doc. # 20 at 15 (citing McBrayer Dep. 41:9, October 11, 2010)). Even then, there is no evidence that a shortage of employees ever *actually* caused Plaintiff himself to go out on patrol.

Further, the evidence shows that Plaintiff was relatively free from direct supervision. To the extent that Plaintiff answered to the city council and the mayor, that supervision was only indirect. Although some of Plaintiff's actions were subject to approval or review at a higher level, Plaintiff had the initial authority to make decisions regarding scheduling, personnel, purchasing, and departmental policy. Further, the nature of Plaintiff's position allowed him significant authority to direct police activities as he saw fit, which is evidenced by his unilateral decision to increase patrols in response to a string of burglaries and publicize those patrols.

As to the fourth element of the executive exemption, the discussion above shows that Plaintiff's recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight.   The record shows that the city council followed Plaintiff's recommendations when hiring at least three employees (the officer Plaintiff recommended by name, the officer hired off the list of qualified applicants that Plaintiff submitted to the city council, and the department secretary).   While it is true that Plaintiff's recommendation to fire one officer was not followed, the executive exemption only requires that the Plaintiff's recommendations be given particular weight, not that his recommendations be followed in every instance.   Defendant has met its burden in showing that Plaintiff was subject to the executive exemption during the time he was paid a salary.[2]

### 2.     Plaintiff was exempt under the administrative exemption.

To invoke the administrative exemption, an employer must establish three elements: 1) the employee is compensated on a salary basis of at least $455 per week; 2) the employee's primary duties involve "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and 3) the employee's primary duties include exercising "discretion and independent judgment with respect to matters of significance."   29 C.F.R. § 541.200(a)(1)-(3).   It is undisputed that the first element is satisfied, so the court need only determine whether a genuine issue of material fact exists as to the second and third elements.

---

[2] Although the court has found that no genuine issue of material fact remains regarding whether Plaintiff fell within the executive exemption, in the interests of being thorough, the court will still address whether he fell within the administrative and the combination exemptions.

The test for the second element of the administrative exemption is whether an employee's primary duties include "office or non-manual work directly related to the management or general business operations of the employer or the employer's customer."  29 C.F.R. § 541.200(a)(2).  The employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id*. § 541.201(a); *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010).  Examples of work directly related to management include work in functional areas such as purchasing, procurement, safety and health, personnel management, human resources, employee benefits, public relations, and other similar activities.  29 C.F.R. § 541.201(b).  Moreover, the exemptions under the regulations are not mutually exclusive; an employee performing these activities may also qualify for another exemption.  *Id.*

The Rule 56 evidence that the court has already concluded is related to the second element of the executive exemption (and has further concluded satisfies that element) applies equally here.  As previously discussed, Plaintiff performed the following activities at his job: approved the pepper spray that could be used; determined which equipment to obtain; increased patrols in areas affected by frequent robberies; created a rank structure and promoted employees within that structure; recommended discipline for several officers; established a policy requiring all officers to become first responders; updated the departmental policy manual; interviewed applicants for department secretary and officer positions; adjusted the work schedules of department personnel; and publicized the increase of patrols in certain areas.  *See supra* p. 10.

As the Chief of Police, Plaintiff undoubtedly performed work directly related to the management of the police force.  The court finds that Plaintiff's job included all of the activities listed in § 541.201(b).

The test for the third element of the administrative exemption is whether the employee's primary duties involve "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  To satisfy this element, the employee's job must "involve[] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id*. § 541.202(a).  This element essentially asks whether "the employee has authority to make an independent choice, free from immediate direction or supervision."  *Id.* § 541.202(c); *Rock*, 380 F. App'x at 879.  The employee may still retain this authority even if his or her decisions are reviewed at a higher level.  29 C.F.R. § 541.202(c).  Further, the employee's duties must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  *Id.* § 541.202(e); *Rock*, 380 F. App'x at 879.

Once again, the evidence which satisfies the second element of the executive exemption is applicable here.  As previously discussed, Plaintiff was relatively free from direct supervision; had the initial authority to make decisions concerning personnel, purchasing, and departmental policy; and had significant authority to direct police activities at his discretion.  *See supra* p. 12.  The evidence shows that Plaintiff exercised his discretion and independent judgment with respect to matters of significance.  *See Rock*, 380 F. App'x at 879 (finding that exercising discretion with regards to what equipment is required and exercising independent judgment in

15

deciding which employees to use in certain tasks weighed in favor of the employee satisfying the third element of the administrative exemption).  Furthermore, Plaintiff's duties clearly involved more than applying "well-established techniques, procedures or specific standards described in manuals or other sources" as Plaintiff was primarily responsible for updating the departmental policy manual and establishing certain policies.  *See supra* p. 10.  Defendant has sufficiently demonstrated that Plaintiff's duties fulfill the third element of the administrative exemption.

      **3.**      **Plaintiff was exempt under the combination exemption.**

      A salaried employee is subject to the combination exemption if he "perform[s] a combination of exempt duties as set forth in the regulations in this part." 29 C.F.R. § 541.708. For instance, "an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."  *Id.*  Exempt work "under one section of this part will not defeat the exemption under any other section." *Id.*  Here, Defendant has produced substantial evidence to show that Plaintiff's work satisfied both the executive and administrative exemptions, Defendant has also provided substantial evidence to demonstrate that Plaintiff's primary duties involved a combination of exempt executive and administrative work.  *See id.*; *supra* Part. III.A.1-2.

      In sum, Defendant has presented substantial evidence that is both undisputed and shows that Plaintiff fell within the executive, administrative, and combination exemptions to the FLSA's overtime requirement during the time he was paid a salary, and Plaintiff has not responded with substantial evidence creating a genuine issue of material fact.  Accordingly, Defendant is entitled to summary judgment to the extent that Plaintiff seeks to recover for unpaid

overtime during the period he was paid a salary (April 2, 2008 until his termination).

**B.    The Undisputed Evidence Demonstrates That Before Plaintiff Began Receiving a Salary, He Was Entitled to Overtime Pay.**

While Plaintiff served as an hourly employee, as a matter of law and logic, neither the executive or administrative exemptions could have applied to him because both exemptions require that an employee be paid on a *salary* basis.  *See* 29 C.F.R. § 541.100(a); *id.* § 541.200(a). However, apparently Defendant does not rely solely on those exemptions; it also argues that Plaintiff was subject to a partial exemption that applies to law enforcement and fire protection employees.  That partial exemption establishes a special sliding scale that increases the number of hours an employee with a work period longer than seven days must work before being entitled to overtime pay.  *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.230.

To invoke that partial exemption, Defendant must "show by 'clear and affirmative' evidence that it has adopted a work period of between 7 and 28 days."  *Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1297 (11th Cir. 1998) (quoting *Birdwell v. City of Gadsden*, 970 F.2d 802, 805-806 (11th Cir. 1992)).  While there is no need for Defendant to make an affirmative showing that it explicitly adopted an alternate work period to support a 7(k) exemption, there must be at least circumstantial evidence in support of such a conclusion.  *Id.* (citing *Birdwell*, 970 F.2d at 806).  To defeat a motion for summary judgment, an employer is not required to meet its full burden by proving with clear and convincing evidence that it has adopted a work period of at least seven, but not more than twenty-eight consecutive days.  But that does not mean that an employer can invoke 7(k) to defeat summary judgment without

17

presenting any such evidence at all.  Here, Defendant has failed to present substantial evidence that the 7(k) exemption applies, or even claim in its brief to have adopted an alternate work period.[3]  Accordingly, the court finds as a matter of law that the 7(k) exemption does not defeat Plaintiff's motion for partial summary judgment.

The undisputed facts show that Plaintiff worked more than forty hours in a work week while he was receiving an hourly wage, but there is a disagreement as to how many hours he worked.  Plaintiff claims he worked 58 hours in his first work week (Doc. # 14 at 2), while Defendant thinks the number is only 47 (Doc. # 18 at 2; Doc. # 13 at 2-3).  This is an issue for the trier of fact because the record evidence is in dispute.

## IV.    CONCLUSION

For the foregoing reasons, the court finds that Defendant's Motion for Summary Judgment (Doc. # 11) is due to be granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment (Doc. # 10) is due to be granted as to liability.  The court concludes that Plaintiff is entitled to recover damages in this case, but only with respect to the work week(s) that he was paid an hourly rate, and not paid an appropriate overtime rate for hours worked in excess of 40.  If the parties cannot resolve their dispute regarding the number of those hours Plaintiff worked, this case will be set for pretrial and for trial in order to determine an

---

[3] Defendant has submitted evidence that it operated on a two-week *pay* period (*see, e.g.,* Doc. # 18 at 2), but a pay period is not the same as a work period, and there is no necessary connection between the two.  *See Avery v. City of Talledega*, 24 F.3d 1337, 1343 (11th Cir. 1994) ("[T]he work period need not correspond to the employees duty cycle or pay period" (internal quotations omitted)).

appropriate damage award for Plaintiff.[4]

The court will issue an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this _____2nd_____ day of September, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[4] The question for the trier of fact will be how many hours in excess of 40 that Plaintiff worked in any work week for which he received an hourly wage.  For each such hour worked in excess of 40 hours, Plaintiff is entitled to $5.00 per hour (inasmuch as he has already been paid his hourly wage – $10.00 per hour – for such work).